# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

|  |  |
|---|---|
| IN RE: BLACKBAUD, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 3:20-mn-02972-JMC<br><br>MDL No. 2972 |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE
## RENEWED MOTION FOR CLASS CERTIFICATION OF CCPA SUBCLASS

**MOTLEY RICE LLC**

*/s/ Marlon E. Kimpson*
Marlon E. Kimpson (SC Bar No. 17042)
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel.: (843) 216-9000
Fax: (843) 216-9027
Email: mkimpson@motleyrice.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN LLP**

*/s/ Harper T. Segui*
Harper T. Segui
825 Lowcountry Blvd., Suite 101
Mount Pleasant, SC 29464
Tel: (919) 600-5000
Fax: (919) 600-5035
Email: hsegui@milberg.com

**DICELLO LEVITT LLP**

*/s/ Amy E. Keller*
Amy E. Keller
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel: (312) 214-7900
Fax: (312) 253-1443
Email: akeller@dicellolevitt.com

**SUSMAN GODFREY L.L.P.**

*/s/ Krysta K. Pachman*
Krysta Kauble Pachman
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
Email: kpachman@susmangodfrey.com

*Interim Co-Lead Counsel for Plaintiffs*

**Table of Contents**

Introduction ........................................................................................................... 1

Relevant Factual Background ................................................................................ 3

Legal Standard ...................................................................................................... 5

Argument .............................................................................................................. 7

    A.    A renewed motion for class certification of a redefined subclass is appropriate ...... 7

    B.    Plaintiffs' redefined CCPA Subclass cures any ascertainability deficiency ........... 10

        1.    Blackbaud customers' notice letters facially demonstrate class membership based on objective criteria. ................................ 11

        2.    Identifying class members will not involve extensive, individualized fact-finding. ............................................ 16

        3.    The Court has not previously considered tying class membership to Blackbaud customers' notice letters to their constituents. .......................... 17

    C.    Renewed class certification briefing does not violate the ordered bellwether process. ................................................................. 19

    D.    Blackbaud's counter-proposal is inefficient. ........................................... 21

    E.    Rule 23(b)(2) does not require ascertainability. .................................... 23

Conclusion ........................................................................................................... 24

## Table of Authorities

**Page(s)**

**Cases**

*Adair v. EQT Production Co.*,
320 F.R.D. 379 (W.D. Va. 2017)......................................................................6, 7, 9

*In re Blackbaud, Inc. Customer Data Breach Litigation*,
2024 WL 2155221 (D.S.C. May 14, 2024)..............................................................17, 18

*Brooks v. GAF Materials Corp.*,
2012 WL 5195982 (D.S.C. Oct. 19, 2012) ................................................................17

*Brown v. Lexington County*,
2021 WL 856878 (D.S.C. March 5, 2021) ................................................................7

*Brown v. Nucor Corp.*,
785 F.3d 895 (4th Cir. 2015) ..............................................................................5, 6, 9

*DeGidio v. Crazy Horse Saloon and Restaurant, Inc.*,
2017 WL 5624310 (D.S.C. Jan. 26, 2017)..............................................................7

*EQT Production Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) ..............................................................................8

*Espinal v. Bob's Discount Furniture, LLC*,
2023 WL 869394 (D.N.J. Jan. 26, 2023) ................................................................7

*In re FieldTurf Artificial Turf Marketing & Sales Practices Litigation*,
2023 WL 4551435 (D.N.J. July 13, 2023)..............................................................6

*Garcia v. Volkswagen Group of America, Inc.*,
2022 WL 18034353 (E.D. Va. Mar. 23, 2022) ................................................................6

*Gardner v. Country Club, Inc.*,
2017 WL 11613887 (D.S.C. Jan. 26, 2017)..............................................................7

*Hargrove v. Sleepy's LLC*,
974 F.3d 467 (3d Cir. 2020)..............................................................................6

*Henderson v. Corelogic National Bakcground Data, LLC*,
2016 WL 4611570 (E.D. Va. Sept. 2, 2016)..............................................................9

*Henderson v. Corelogic National Bakcground Data, LLC*,
2018 WL 1558556 (E.D. Va. Mar. 22, 2018) ..............................................................9

i

*Henderson v. Corelogic National Background Data, LLC*,
   2016 WL 4611571 (E.D. Va. Sept. 2, 2016)......................................................................8, 9

*Hernandez v. Midland Credit Management Inc.*,
   2017 WL 11832032 (N.D. Ill. Dec. 15, 2017) .........................................................................8

*In re Initial Public Offering Securities Litigation*,
   483 F.3d 70 (2d Cir. 2007)......................................................................................................8

*Kadel v. Folwell*,
   100 F.4th 122 (4th Cir. 2024) .......................................................................................3, 9, 24

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008).............................................................................................7

*Kelly v. RealPage Inc.*,
   47 F.4th 202 (3d Cir. 2022) ..................................................................................................13

*Krakauer v. Dish Network, L.L.C.*,
   925 F.3d 643 (4th Cir. 2019) .................................................................................................10

*Mr. Dee's, Inc. v. Inmar, Inc.*,
   2023 WL 5436178 (M.D.N.C. Aug. 23, 2023)........................................................................7

*Peters v. Aetna Inc.*,
   2 F.4th 199 (4th Cir. 2021) ...................................................................................................10

*Soutter v. Equifax Information Services, LLC*,
   307 F.R.D. 183 (E.D. Va. 2015) .....................................................................................13, 16

*Williams v. Big Picture Loans, LLC*,
   339 F.R.D. 46 (E.D. Va. 2021) ...............................................................................................7

*In re Zetie (Ezetimibe) Antitrust Litigation*,
   2022 WL 1577219 (E.D. Va. Jan. 25, 2022) ..........................................................................6

**Statutes**

Cal. Civ. Code § 1798.29......................................................................................................4

Cal. Civ. Code § 1798.81.5 (2020) ..................................................................................1, 11

Cal. Civ. Code § 1798.82......................................................................................................4

Cal. Civ. Code § 1798.150 (2020) .......................................................................1, 2, 10, 22

**Other Authorities**

California Attorney General, *Search Data Security Breaches,*
    https://oag.ca.gov/privacy/databreach/list...................................................................5

Fed. R. Civ. P. 23 ........................................................................................... *passim*

*Guidelines & Best Practices For Large & Mass-Tort MDLs* (2d ed. Sept. 2018),
    available at
    https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bo
lch....................................................................................................................21

**Introduction**

Pursuant to Case Management Order No. 29 (ECF 505), Plaintiffs seek leave to file a renewed motion for class certification only as to the California Consumer Privacy Act ("CCPA") Subclass, a proposed version of which is attached to this motion as Exhibit A.

Liability under the CCPA turns on two elements: (1) the unauthorized access and exfiltration of certain identified "personal information;" and (2) the business's failure to "implement and maintain reasonable security procedures and practices" to protect such personal information. Cal. Civ. Code § 1798.150(a) (2020). The CCPA defines "personal information" to include an individual's unencrypted first name or first initial and last name "in combination with" any of their: social security number, driver's license number, California identification card number, tax identification number, passport number, military identification number, bank account number, credit card number, debit card number, health insurance policy number, or health insurance subscriber identification number. *See* Cal. Civ. Code § 1798.81.5(d)(1)(A), (3) (2020). Accordingly, in the proposed motion, Plaintiffs seek to certify under both Rule 23(b)(2) and (b)(3) a redefined CCPA Subclass that specifically tracks the categories of data protected by the CCPA.

Plaintiffs define the CCPA Subclass as:

> All natural persons residing in California who received a notice letter from a Blackbaud customer stating that their first name or first initial and last name in combination with any one of their (i) social security number, (ii) driver's license number, (iii) California identification card number, (iv) tax identification number, (v) passport number, (vi) military identification number, (vii) bank account number, (viii) debit card number, (ix) credit card number, (x) health insurance policy number, or (xi) health insurance subscriber identification number, was exposed, exfiltrated, taken, stolen, accessed, acquired, copied, impacted, and/or contained in the backup file involved in Blackbaud, Inc.'s data security breach between February 7, 2020 and May 20, 2020.

Membership of the proposed CCPA Subclass will turn solely on the review of notice letters received by California residents—notice letters sent by a known universe of Blackbaud customers, sample

1

copies of which Plaintiffs already have collected and reviewed. Under Plaintiffs' redefined CCPA Subclass, identifying subclass members does not depend on any analysis of the data accessed and exfiltrated by the cybercriminal.[1] Determining subclass membership therefore does not involve individualized factfinding.

Further, a renewed class certification motion concerning the CCPA Subclass presents a straightforward and efficient means of litigating the "bellwether" claims that is consistent with this Court's November 21, 2022, Order on staged class certification briefing. The Court's ruling on the renewed motion will streamline the issues before the Court under Rule 23, and, as the proposed motion demonstrates, the Court will not need to address expert issues to adjudicate certification of the proposed CCPA Subclass. This is because (1) Plaintiffs need only show that Blackbaud's security measures were inadequate on a classwide basis, which Blackbaud has already conceded;[2] and (2) the CCPA contemplates statutory damages based on the circumstances of the data breach and Blackbaud's financial condition, which are common to the subclass. *See* Sealed Hr'g Tr. (Mar. 6, 2024), a true and correct excerpt of which is attached hereto as Exhibit B, at 124:19–125:3 (agreeing that Blackbaud's deficient security measures is "certainly a common question"); Cal. Civ. Code § 1798.150(a)(1)(A), (2) (providing for statutory damages between $100 and $750 per incident based on factors such as "the nature and seriousness of the misconduct" and Blackbaud's "assets, liabilities, and net worth").

---

[1] By contrast, Plaintiffs' initial Motion for Class Certification defined the CCPA Subclass as: "All natural persons residing in California whose unencrypted information (1) was stored on the database" of specific Blackbaud customers. ECF 292 at 1.

[2] While the Court need not rely on Mr. Curtin's expert report on information security measures in order to rule in Plaintiffs' favor, Mr. Curtin's information security report confirms that this evidence is common to the proposed CCPA Subclass.

Finally, *Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024), which the Fourth Circuit decided after the parties completed briefing on Plaintiffs' motion for class certification, supports consideration of the proposed renewed motion for a separate reason. There, the Fourth Circuit clarified that ascertainability is not a threshold requirement for declaratory or injunctive relief classes under Rule 23(b)(2). *Id.* at 161. The proposed (b)(2) CCPA Subclass therefore does not implicate any ascertainability concerns.

### Relevant Factual Background

As this Court is well aware, Blackbaud's conduct resulted in one of the largest data breaches in American history.

Following the initial breach, on July 16, 2020, Blackbaud gave notice to its customers whose constituents' data Blackbaud determined may have been involved in the attack. Def's Resp. to Interrog. No. 12 [ECF 294-7] at 49. In turn, Blackbaud's customers sent notice letters to their constituents whose personal information was compromised to alert them to Blackbaud's security breach and the extent of personal information exposed. Several of Blackbaud's customers sent these notice letters after conducting their own investigations.

For example, on August 26, 2020, Blackbaud customer Crystal Stairs Inc., a California child development service provider and advocate, sent plaintiff Mamie Estes (a California resident who seeks to represent the CCPA Subclass in this action) a "Notice of Data Breach." ESTES000258-262 at -258, a true and correct copy of which is attached hereto as Exhibit C. The notice letter states that once Crystal Stairs received notice from Blackbaud of the data breach, Crystal Stairs "immediately began an investigation to determine what, if any, sensitive stakeholder [constituent] data was potentially involved" and that its "investigation determined that *the involved Blackbaud systems contained your name and Social Security number or tax identification number*":

3



*Id.*[3]

California law requires agencies and businesses that operate in the state (like Crystal Stairs) to disclose security data breaches to their constituents whose unencrypted personal information was acquired by an unauthorized person, such as in the Blackbaud data breach at issue here. Cal. Civ. Code §§ 1798.29(a), 1798.82(a). California law further requires those agencies and businesses that are required to issue such security breach notices to "more than 500 California residents as a result of a single breach of the security system" to submit to the Attorney General a copy of the breach notice letters sent to their California constituents. *Id.* §§ 1798.29(e), 1798.82(f). In compliance with California law, over 40 Blackbaud customers, including Crystal Stairs, submitted to the California

---

[3] Emphasis is added throughout this brief unless otherwise indicated.

Attorney General copies of the breach notice letters they sent their constituents about Blackbaud's underlying data breach.[4]

Based on these publicly available sample notice letters alone, Blackbaud customers sent notices to thousands, if not tens of thousands, of California residents informing them that their personal information (as defined by the CCPA) was exposed.

### Legal Standard

Rule 23 plainly contemplates renewed class certification motions, as it expressly permits the alteration or amendment of orders denying class certification. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also Brown v. Nucor Corp.*, 785 F.3d 895, 902 n.3 (4th Cir. 2015) (explaining that district court had authority under Rule 23(c)(1)(C) "to monitor the class and make changes when appropriate").

As the Third Circuit recently explained when reversing the denial of class certification,

[c]oncern about parties getting a second opportunity, however, cannot override the language of Rule 23(c)(1)(C), which allows for multiple bites at the apple throughout the litigation, and that does not impose an additional requirement on parties to prove a change in law or show new evidence to succeed on a renewed motion for certification. The Rule does not distinguish between a renewed motion for certification based on new evidence and one based on a more narrow and clearer definition of a class that meets the requirements of Rule 23. ***As a practical matter, we know no reason why plaintiffs who can cabin more clearly their class, and meet the other Rule 23 requirements, should be barred from succeeding on a renewed motion.***

---

[4] The identity of Blackbaud customers who sent notice letters to California residents and the copies of exemplar notice letters Blackbaud customers sent, are available on the California Attorney General's website, https://oag.ca.gov/privacy/databreach/list (last visited Sept. 26, 2024). Plaintiffs' counsel has collected and reviewed all the notice letters that Blackbaud's customers filed with the California Attorney General in connection with the underlying data breach, true and correct copies of which are attached as Exhibits 4–53 to Plaintiffs' proposed class certification motion.

*Hargrove v. Sleepy's LLC*, 974 F.3d 467, 476–77 (3d Cir. 2020). In *Sleepy's*, as here, the district court had denied plaintiffs' initial motion for class certification on ascertainability grounds. 974 F.3d at 474. Plaintiffs filed a renewed motion for class certification of a narrower proposed class, which the district court again denied—this time for failure to satisfy (1) the standard of review for reconsideration motions as well as (2) ascertainability. *Id.* at 474–75. On appeal, the Third Circuit "decline[d] to import the stringent motion-for-reconsideration standard to a renewed motion for class certification" based on Rule 23's plain language and held the district court applied "too exacting" a standard of ascertainability. *Id.* at 477, 479.

Multiple courts have followed *Sleepy's* and treated renewed motions for class certification "as they would initial motions under Rule 23." *In re FieldTurf Artificial Turf Mktg. & Sales Pracs. Litig.*, 2023 WL 4551435, at *3 (D.N.J. July 13, 2023); *see also Garcia v. Volkswagen Grp. of Am., Inc.*, 2022 WL 18034353, at *1 (E.D. Va. Mar. 23, 2022) (acknowledging *Sleepy's* textual analysis but finding plaintiffs' new proposed class definition did not remedy deficiencies in originally proposed class); *In re Zetie (Ezetimibe) Antitrust Litig.*, 2022 WL 1577219, at *10 (E.D. Va. Jan. 25, 2022) (considering renewed motion for class certification under same Rule 23 standard but finding new evidence did not remedy previously identified numerosity deficiency).

A subsequent change in law further supports consideration of renewed motions for class certification. *See Brown*, 785 F.3d at 901–02 (finding district court had authority to revisit class certification, despite earlier Fourth Circuit order on class certification, because a subsequent Supreme Court decision "provided a sufficiently significant change in the governing legal standard to permit a limited reexamination of whether the class satisfied the commonality requirement" of Rule 23); *see also Adair v. EQT Prod. Co.*, 320 F.R.D. 379, 400 (W.D. Va. 2017) (concluding that "plaintiffs' revised proposed class definitions, combined with the change in law, adequately address

the administrative challenges of determining class membership," and granting in part renewed motion for class certification).

## Argument

**A.    A renewed motion for class certification of a redefined subclass is appropriate.**

This Court should exercise its broad discretion to permit Plaintiffs to file a renewed motion for class certification that cures the Court's ascertainability concerns. It is commonplace for courts in this Circuit and across the country to consider renewed motions for class certification to remedy defects in an earlier class certification proposal. *See, e.g.*, *Mr. Dee's, Inc. v. Inmar, Inc.*, 2023 WL 5436178, at *4, 23 (M.D.N.C. Aug. 23, 2023) (permitting plaintiffs to file three motions for class certification and granting renewed motion for class certification as to All Payer Retailer Class); *Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 52, 64 (E.D. Va. 2021) (granting renewed motion for class certification); *Brown v. Lexington County*, 2021 WL 856878, at *2–3, 10 (D.S.C. March 5, 2021) (same); *DeGidio v. Crazy Horse Saloon and Restaurant, Inc.*, 2017 WL 5624310, at *2, 16 (D.S.C. Jan. 26, 2017) (same); *Gardner v. Country Club, Inc.*, 2017 WL 11613887, at *1, 7 (D.S.C. Jan. 26, 2017) (same); *see also Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 107 (N.D. Cal. 2008) (granting renewed motion for class certification and stating "Rule 23 confers broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court" (internal quotation marks omitted)).

When the purported defects concern ascertainability, as here, renewed motions for certification of a redefined class are particularly appropriate. *See, e.g.*, *Espinal v. Bob's Discount Furniture, LLC*, 2023 WL 869394, at *2–3, 9 (D.N.J. Jan. 26, 2023) (granting renewed motion for class certification of redefined proposed class where plaintiffs previously failed to demonstrate ascertainability); *Adair*, 320 F.R.D. at 400, 423–24 (considering renewed motion for class

7

certification of redefined class and finding ascertainability satisfied on renewed motion); *Hernandez v. Midland Credit Mgmt., Inc.*, 2017 WL 11832032, at *1 (N.D. Ill. Dec. 15, 2017) (concluding on plaintiff's renewed motion for class certification that plaintiff's redefined proposed class "has clearly solved" one ascertainability deficiency and "almost certainly solved" the other ascertainability deficiency); *see also EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (vacating order granting class certification and *sua sponte* directing the district court on remand to "determine whether it is possible to adjust the class definitions to avoid or mitigate the administrative challenges" identified in the appellate court's ascertainability analysis); *In re Initial Pub. Offering Secs. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) ("Nothing in our decision precludes the Petitioners from returning to the District Court to seek certification of a more modest class, one as to which the Rule 23 criteria might be met, according to the standards we have outlined. District courts have ample discretion to consider . . . a revised class certification motion after an initial denial." (collecting cases)).

The Eastern District of Virginia's decision in *Henderson v. Corelogic National Background Data, LLC*, 2016 WL 4611571 (E.D. Va. Sept. 2, 2016), is also instructive. There, plaintiffs filed a second renewed motion for class certification of redefined proposed subclasses. *Id.* at *1–2. Defendant moved to strike, arguing that plaintiffs should be bound by the class definitions alleged in the operative complaint and that plaintiffs cannot demonstrate good cause to amend the pleading. *Id.* at *2. Rejecting defendant's argument, the court explained, "Plaintiffs are not attempting to offer an entirely new claim or theory of the case; rather, Plaintiffs merely have attempted to refine the theory that they have espoused since the initiation of this case so as to make the proposed class more manageable." *Id.* at *4. The court denied defendant's motion, considered the revised class definitions and subclasses proposed in plaintiffs' renewed motion for class certification without

requiring amendment, and ordered counsel to submit a plan for the reopening of limited discovery relating to the proposed subclasses in the renewed motion. *Id.* at *4, 9.[5]

Likewise, here, Plaintiffs propose a revised definition of the CCPA Subclass that seeks to define the class by reference to objective criteria and to address this Court's ascertainability concerns while maintaining the same theory of CCPA liability advanced in the operative complaint. As discussed in more detail below, Plaintiffs' proposed renewed motion for class certification of the CCPA Subclass is based on notice letters that Blackbaud customers sent their constituents as required by California law—not on the contents of Blackbaud's databases or Blackbaud's post-breach investigation, which were central to the Court's previous ascertainability determination.

Additionally, the Court should permit Plaintiffs to file a renewed motion for class certification of the CCPA Subclass under Rule 23(b)(2) in light of the Fourth Circuit's recent decision in *Kadel v. Folwell* declining to impose an ascertainability requirement in cases seeking certification of a Rule 23(b)(2) class. 100 F.4th at 161. Because this decision followed the parties' briefing on class certification, the change in law further supports the Court's consideration of Plaintiffs' renewed motion. *See Brown*, 785 F.3d at 901–02 (finding a Supreme Court decision concerning commonality under Rule 23 that was issued after Fourth Circuit reversed decision denying class certification justified district court's reconsideration of certification order); *Adair*, 320 F.R.D. at 400 (finding plaintiffs' narrowed class definition in renewed class certification motion, in combination with an underlying change in law, satisfied ascertainability).

---

[5] In an opinion issued the same day, the court denied without prejudice plaintiffs' renewed motion concerning the redefined subclasses so that the parties could conduct limited discovery related to the subclasses in order to fully brief class certification of those subclasses. *Henderson v. Corelogic Nat'l Bakcground Data, LLC*, 2016 WL 4611570, at *2 (E.D. Va. Sept. 2, 2016). The parties later settled. *Henderson v. Corelogic Nat'l Bakcground Data, LLC*, 2018 WL 1558556 (E.D. Va. Mar. 22, 2018).

In sum, leave to file a renewed motion for class certification is appropriate and well within the Court's discretion to manage putative class actions on its docket.

**B.    Plaintiffs' redefined CCPA Subclass cures any ascertainability deficiency.**

In this Circuit, ascertainability requires that the "members of a proposed class be readily identifiable" "in reference to objective criteria." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (affirming judgment in favor of plaintiff after trial and finding certified class satisfied ascertainability). "The goal is not to identify every class member at the time of certification, but to define a class in such a way as to ensure that there will be some administratively feasible way for the court to determine whether a particular individual is a member at some point." *Id.* at 658 (cleaned up); *accord Peters v. Aetna Inc.*, 2 F.4th 199, 242 (4th Cir. 2021) ("A plaintiff need not be able to identify every class member at the time of certification. But if class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." (cleaned up)) (reversing denial of class certification because district court analyzed ascertainability "too rigidly").

The CCPA gives a private right of action to any consumer whose unencrypted "personal information" (as defined) "is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate" to protect the personal information. Cal. Civ. Code § 1798.150(a) (2020). As noted above, liability under the CCPA therefore turns on two elements: (1) whether a consumer's "personal information" was accessed and exfiltrated; and (2) whether Blackbaud maintained reasonable security procedures and practices. The CCPA defines "personal information" to include an individual's unencrypted first name or first initial and last name "in combination with" any of their: social security number, driver's license number, California

identification card number, tax identification number, passport number, military identification number, bank account number, credit card number, debit card number, health insurance policy number, or health insurance subscriber identification number. *See* Cal. Civ. Code § 1798.81.5(d)(1)(A), (3) (2020).

> Accordingly, Plaintiffs propose redefining the CCPA Subclass as follows:

> All natural persons residing in California who received a notice letter from a Blackbaud customer stating that their first name or first initial and last name in combination with any one of their (i) social security number, (ii) driver's license number, (iii) California identification card number, (iv) tax identification number, (v) passport number, (vi) military identification number, (vii) bank account number, (viii) debit card number, (ix) credit card number, (x) health insurance policy number, or (xi) health insurance subscriber identification number, was exposed, exfiltrated, taken, stolen, accessed, acquired, copied, impacted, and/or contained in the backup file involved in Blackbaud, Inc.'s data security breach between February 7, 2020 and May 20, 2020.

This proposed subclass resolves the Court's earlier concerns with ascertainability, provides an administratively feasible means to identify class members, and presents a previously unconsidered ascertainability analysis. The Court therefore should grant Plaintiffs leave to file the proposed renewed motion for class certification of the proposed CCPA Subclass.

### 1. Blackbaud customers' notice letters facially demonstrate class membership based on objective criteria.

Membership in the proposed CCPA Subclass turns on whether (1) the subclass member is a California resident; (2) the subclass member received a notice letter from a Blackbaud customer; and (3) the notice letter communicates that the subclass member's qualifying personal information was compromised in the Blackbaud data breach. Each of these elements provides an objective means of determining subclass membership. And the satisfaction of every single criterion can be determined based on review of the notice letters that Blackbaud's customers sent to their California resident constituents, and the notice letters alone.

That identification of class members turns on the review of external documents—in this case, the notice letters themselves—does not undermine the administrative feasibility of identifying membership in the proposed CCPA Subclass. Courts frequently find ascertainability satisfied where the review of external records is required. As the District of Maryland recently explained in *Yates v. NewRez LLC*,

> There is no requirement that a class can be deemed ascertainable only if it can be perfectly generated at the touch of a button. The need to review individual files to identify its members is not a reason to deny class certification. Indeed, the ascertainability requirement does not suggest that *no* level of inquiry as to the identity of class members can ever be undertaken because if that were the case, no Rule 23(b)(3) class could ever be certified.

686 F. Supp. 3d 397, 407 (D. Md. 2023) (cleaned up) (emphasis in original) (finding ascertainability satisfied where electronic records "can be used to come very close to identifying a complete list of" class members).

For example, in *Reed v. Big Water Resort, LLC*, a sister District of South Carolina court found plaintiffs' proposed class satisfied ascertainability where they defined the class by reference to a membership agreement containing specific language. 2015 WL 5554332, at *3–4 (D.S.C. Sept. 21, 2015) (denying class certification without prejudice on other grounds). Specifically, the Court found the class "sufficiently ascertainable" and "sufficiently definite" because it "consist[s] of only those membership holders whose agreement contains the pertinent provision" even though determining class membership would "require at least some inquiry into . . . whether the contract at issue had" the identified contractual provision. *Id.* at *3–4, 6. Similarly, in *Henson v. Progressive Premier Insurance Co. of Illinois*, the Eastern District of North Carolina rejected defendant's ascertainability challenge where determining class membership would require "reference to [defendant]'s records to answer a series of five, binary, yes-or-no questions." 2024 WL 3051264, at *5–6 (E.D.N.C. June 10, 2024) (finding such exercise not "particularly labor-intensive" but

denying class certification for lack of predominance); *see also Kelly v. RealPage Inc.*, 47 F.4th 202, 223–25 (3d Cir. 2022) ("[A] straightforward 'yes-or-no' review of existing records to identify class members is an administratively feasible even if it requires review of individual records with cross-referencing of voluminous data from multiple sources."); *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 197 (E.D. Va. 2015) (granting class certification and explaining in ascertainability analysis that the "manual, member-by-member review" of data from two sources to ascertain class members does not "render the inquiry 'subjective'" where "most of the determinations are readily discernible and almost always binary").

Here, membership in Plaintiffs' redefined CCPA Subclass will be determined exclusively by reference to the notice letters Blackbaud customers sent their constituents. Review of those letters will answer the binary questions of whether the constituent is a California resident and whether Blackbaud's data breach exposed the constituent's statutorily qualifying personal information. This makes confirming membership in the CCPA Subclass analogous to the exercise in *Reed* (because membership turns on the presence of specific qualifying language in a single document) and even simpler than that in *Henson* (because only two objective criteria need to be satisfied to confirm membership) and *RealPage* (because no records other than the notice letter need be cross-referenced), and *Soutter* (because no records other than the notice letter need be cross-referenced and because *all* of the membership determinations are readily discernible and binary). Additionally, the fact that "applying the criteria could take significant time and effort" given the likely size of the subclass "does not factor into the Court's ascertainability determination," as "[h]olding otherwise would mean that defendants could defeat class certification when their conduct affects a large number of individuals and the class-action device can be most useful." *Soutter*, 307 F.R.D. at 199.

13

In the table below, nine exemplar notice letters that Blackbaud customers reported to the California Attorney General demonstrate the ease of determining class membership based on review of the notice letters alone. Each notice letter specifically discusses the underlying 2020 Blackbaud data breach and confirms the letter was sent by or on behalf of a Blackbaud customer. The notice letters state definitively whether the constituent's name and social security number, tax identification number, or other qualifying data—*i.e.*, "personal information" under the CCPA—were exposed in Blackbaud's data breach. These exemplar notice letters thus definitively evidence affirmative membership in the CCPA Subclass:

| Blackbaud Customer | Personal Information Exposed | Qualifying Language | Exhibit |
|---|---|---|---|
| Center for Early Education | Name, Social Security Number | On September 2, 2020, we determined that the backup files contained certain information pertaining to you. . . . The backup file involved contained your name and Social Security number. | F |
| Crystal Stairs Inc. | Name, Social Security Number | Crystal Stairs' investigation determined that the involved Blackbaud systems contained your name and Social Security number or tax identification number. | G |
| Florida State College at Jacksonville Foundation | Name, Social Security Number | On September 15, 2020, we determined that the backup files contained certain information pertaining to you. . . . The backup file involved contained your name and Social Security number. | H |
| Fort Hays State University Foundation | Name, Social Security Number | We . . . determined on February 25, 2021 that the backup files contained certain unencrypted information pertaining to you. . . . The backup file involved contained your name and Social Security number. | I |

| Blackbaud Customer | Personal Information Exposed | Qualifying Language | Exhibit |
|---|---|---|---|
| Georgia Southern University | Name, Social Security Number | On September 8, 2020, we determined that the backup files contained certain information pertaining to you. . . . The backup file involved contained your name[] [and] Social Security number . . . . | J |
| International Medical Corps | Name, Bank Account Number | We determined that the backup file contained certain information pertaining to you. . . . The file contained your name and financial account information from a scanned check for the account ending in [last four digits] . . . . | K |
| Oakwood School | Name, Social Security Number | We . . . determined on November 12, 2020 that the backupfiles contained certain unencrypted information pertaining to you. . . . The backup file involved contained your name and Social Security number. | L |
| San Francisco University High School | Name, Social Security Number | On November 17, 2020, we determined that the unencrypted Blackbaud backup file contained some of your information. . . . The Blackbaud backup file involved contained your name and Social Security number. | M |
| The Seven Hills School | Name, Social Security Number | The Blackbaud backup file involved contained your name and Social Security number. | N |

The content of these sample notice letters, like the letters individual constituents received, readily identifies class members with reference to objective criteria. Tying CCPA Subclass membership to the receipt of a qualifying notice letter further presents an administratively feasible means of identifying class members because all elements of class membership can be determined based on the review of the customer notice letter alone. Ascertainability is therefore satisfied.

15

2. **Identifying class members will not involve extensive, individualized fact-finding.**

As demonstrated above, dozens of Blackbaud customers sent notice letters to their California resident constituents. In fact, notice letters concerning the underlying Blackbaud data breach from 43 Blackbaud customers are publicly available online through the Office of the California Attorney General. *See* note 4, *supra*. Plaintiffs already have reviewed all the notice letters these Blackbaud customers sent to their constituents to determine which contain qualifying language that evidences membership in the proposed CCPA Subclass, identified in the table above.

Further, as the accompanying declaration of Gina Intrepido-Bowden explains, the claims administrator can identify subclass members through a targeted publication notice campaign—even without any additional discovery. *See* Intrepido-Bowden Decl. at ¶¶ 11–26 (discussing how the claims administrator would provide notice to the proposed CCPA Subclass via a digital notice effort combined with a case website, toll-free number, and post office box, which Ms. Intrepido-Bowden estimates would reach at least 70% of the proposed subclass). The claims administrator therefore will be able to determine whether a particular individual is a subclass member (or not) based on the CCPA Subclass's objective criteria and the notice letters alone. This objective administrative review of the notice letters to make a binary determination of whether the letters state that constituents' qualifying data elements were exposed does not render subclass membership criteria subjective or entail the kind of individualized fact-finding that defeats ascertainability. *See, e.g.*, *Soutter*, 307 F.R.D. at 197 ("The individualized fact-finding giving rise to mini-trials that defeat ascertainability are those requiring determinations on the merits—not an administrative review to determine whether an objective element of a class definition is met.").

Additionally, with the Court's permission, Plaintiffs may obtain copies of the individual notice letters those Blackbaud customers sent their constituents, or a data report of the constituents

who received such notice letters, through targeted discovery of a known set of Blackbaud customers. *See* Intrepido-Bowden Decl. at ¶ 14 (stating that direct notice is preferred but not necessary to accomplish class notice). Importantly, targeted discovery of Blackbaud's customers for the purpose of identifying subclass members does not undermine ascertainability. *See Brooks v. GAF Materials Corp.*, 2012 WL 5195982, at *4 (D.S.C. Oct. 19, 2012) (finding ascertainability satisfied where plaintiffs proposed identifying class members based in part on the fact that third party installers of the defendant's products "would likely be able to identify their own customers as class members," and granting in part plaintiffs' motion to redefine class).

Plaintiffs therefore have demonstrated an administratively feasible manner of determining whether a particular individual is a member of the CCPA Subclass.

**3.     The Court has not previously considered tying class membership to Blackbaud customers' notice letters to their constituents.**

Contrary to Blackbaud's attorney argument at the September 3, 2024, status conference, this Court *has not* considered and ruled on the ascertainability of the proposed CCPA Subclass based on class members' receipt of a qualifying data breach notice letter from Blackbaud's customers. *See* Hr'g Tr. (Sept. 3, 2024), a true and correct excerpt of which is attached hereto as Exhibit D, at 24:17–25:10. Rather, the Court's order denying class certification addressed *Blackbaud*'s notice to *its* customers based solely on *Blackbaud*'s review of its customer backup files. *See In re Blackbaud, Inc. Customer Data Breach Litig.*, 2024 WL 2155221, at *20–21 (D.S.C. May 14, 2024) [ECF 497 at 46–49]; *see also id.* at *23 [ECF 497 at 52] ("Defendant never contacted any putative class members directly to provide them with notice; *nor is there evidence that Defendant's customers did so*."). In contrast, what Plaintiffs now propose in their renewed motion is the identification and confirmation of CCPA Subclass members based on *constituents'* receipt of notice letters from *Blackbaud's customers*, which provide on their face all elements of CCPA

17

Subclass membership. And Plaintiffs already have collected from the California Attorney General website sample notice letters that contain qualifying language demonstrating membership in the proposed subclass such that no additional discovery is necessary to rule in Plaintiffs' favor.

Furthermore, the definitive language in qualifying notice letters from *Blackbaud's customers* to *their constituents* resolves the Court's ascertainability concern with determining class membership based on *Blackbaud*'s notice to *its* customers. The order denying class certification states that Blackbaud's process of notifying its customers of "potential" exposure of their constituents' data, and some customers' subsequent mass notice, "does not demonstrate that an administratively feasible method exists for ascertaining a class." *Id.* at *21. The Court raised a similar concern at the September 3 status conference over notice letters that communicate only the *possibility* that an unauthorized actor accessed and exfiltrated constituent's personal information. *See* Ex. D at 23:17–24:1. As the above table of exemplar notice letters makes clear, Blackbaud customers' notice letters to constituents contain definitive language confirming that recipients are part of the proposed CCPA Subclass, *based on Blackbaud customers' determinations regarding the data contained in its databases, which Blackbaud itself did not review*. *See* Def.'s Opp'n to Pls.' Mot. to Certify Class [ECF 329] at 12 n.7 ("Blackbaud made no attempt to identify 'affected constituents,' as it did not view its customers' data to even attempt to validate the data, e.g., confirm whether the data stored was an actual Social Security number or bank account number.").

Consider again, for example, the notice letter that Crystal Stairs sent to plaintiff Mamie Estes. That letter states, "Once Blackbaud notified Crystal Stairs [of the data breach], *we immediately began an investigation to determine* what, if any sensitive stakeholder data was potentially involved. . . . Crystal Stairs' investigation *determined* that the involved Blackbaud systems *contained* your name and Social Security number or tax identification number":

> **What Happened?** Blackbaud reported that upon discovering this breach Blackbaud worked with security consultants to respond to the threat. Following its investigation, Blackbaud notified Crystal Stairs that the cybercriminal may have accessed or acquired Blackbaud customer data, before Blackbaud locked them out on May 20, 2020. Blackbaud informed us that the perpetrators told Blackbaud that the stolen data was destroyed. Based on the nature of the incident, the research Blackbaud performed, and analysis by third-party investigators, Blackbaud informed us that it has no reason to believe that the cybercriminals transmitted or disseminated any of the data publicly. Blackbaud has also hired a team of experts to continue monitoring for any such activity. Once Blackbaud notified Crystal Stairs, we immediately began an investigation to determine what, if any, sensitive stakeholder data was potentially involved.
>
> **What Information Was Involved?** Crystal Stairs' investigation determined that the involved Blackbaud systems contained your name and Social Security number or tax identification number. Blackbaud paid for the return of all information that was involved in the incident.

Ex. C at -258. By contrast, a notice letter stating that Blackbaud's stolen data file "may have contained" constituents' personal information, or that constituents' personal information was "potentially exposed" would not trigger class membership. As Plaintiffs already have reviewed all sample notice letters that Blackbaud's customers reported to the California Attorney General (as California law requires), there is a known subset of Blackbaud customers whose constituents are— and are not—part of the proposed CCPA Subclass.

## C. Renewed class certification briefing does not violate the ordered bellwether process.

Permitting a renewed motion for class certification on the CCPA claim is consistent with the November 21, 2022, Order on Plaintiffs' Motion to Stage Class Certification Briefing (the "Staged Briefing Order"). The Staged Briefing Order directed Plaintiffs to seek certification of only a "subset of claims," including the CCPA claim, at the outset. ECF 285 at 2.

Plaintiffs' proposed renewed motion for class certification does not violate this ordered procedure. The Staged Briefing Order directed, and both sides have operated under the expectation, that the Court would resolve class certification issues, and on only some of Plaintiffs' claims, before the parties determine how to proceed with the non-bellwether claims. Plaintiffs' proposal for renewed class certification briefing is consistent with that Order and the parties' expectations because the parties still will litigate class certification as to the bellwether claims before deciding

how to treat the remaining claims. The main objective of Plaintiffs' Motion to Stage Class Certification Briefing (ECF 283) was to limit the number of claims the parties would brief, and the Court would consider, at the class certification stage so as to give the parties a clear understanding of which non-bellwether claims would be certified, to assist the parties in their effort to resolve the case, and to maximize the Court's limited resources. *See* Pls.' Memo. In Support of Mot. to Stage Class Certification Br. [ECF 283-1] at 2; *see also* Hr'g Tr. (Nov. 3, 2022), a true and correct excerpt of which is attached hereto as Exhibit E, at 8:14–15 ("[Ms. Keller (Plaintiffs' Counsel):] But the important thing is the Bellwether process would limit the number of claims that would have to be briefed --"). A preliminary renewed motion for class certification of only the CCPA Subclass is consistent with and is best suited to advance this goal, as discussed in detail below.

Nothing in the Staged Briefing Order states that if the Court denies class certification Plaintiffs cannot pursue a renewed class certification motion or that all bellwether claims immediately must proceed to summary judgment and then trial. While the shared expectations underlying the Staged Briefing Order were that the Fourth Circuit would consider any appeal under Rule 23(f), and that any decision on appeal might permit summary judgment and trial to follow the initial class certification decision, Plaintiffs' instant proposal for renewed class certification briefing remains consistent with the letter and import of the Staged Briefing Order. Indeed, as discussed above and acknowledged at the September 3 status conference, renewed class certification briefing concerning a redefined class is common and is especially proper where the Court's initial denial of certification is premised on ascertainability.

In any event, *even if* Plaintiffs' proposal for renewed class certification briefing constituted a departure from the ordered procedure (and it does not), slight modification of the Staged Briefing Order to permit renewed class certification briefing would be appropriate. The MDL Guidelines

contemplate making modifications to an MDL management plan where doing so best achieves the objectives of MDL litigation. *See Guidelines & Best Pracs. For Large & Mass-Tort MDLs*, MDL Guideline 1, Best Practice 1B at 3 (2d ed. Sept. 2018)[6] [hereinafter "Guidelines"] ("The court and parties should be vigilant to spot developments that may require modification of the plan [for managing the MDL]."). Here, as detailed in the following section, Plaintiffs' proposal provides the most efficient means to progress this litigation and demonstrates the necessity of any modification of the Staged Briefing Order to permit the parties to fully resolve class certification as to the bellwether claims before summary judgment and any trial.

**D.    Blackbaud's counter-proposal is inefficient.**

Rather than "streamlin[e] key issues," "reduc[e] litigation costs," "sav[e] the time and effort of the parties, attorneys, witnesses, and court[]," and "mov[e] [this] case[] toward resolution (by trial, motion practice, or settlement)," as the MDL Guidelines encourage, Blackbaud proposes a plan for resolving this case that will *complicate* the case procedurally; *increase* costs; *increase* the necessary resources of the parties, attorneys, witnesses, and this Court; and *prolong* the resolution of this case. Guidelines, MDL Guideline 1 at 2 (identifying "[t]he objectives of an MDL proceeding").

The objective of litigating class certification as to only a subset of Plaintiffs' claims was to minimize the resources—of the parties, their counsel, and the Court—necessary to progress this case toward an efficient and just resolution because the Court's certification ruling would give the parties' guidance as to the certifiability of the remaining 80+ claims. The same is still true under Plaintiffs' proposal.

---

[6] Available at https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bolch.

The proposed CCPA Subclass presents the most efficient vehicle to demonstrate that Plaintiffs can satisfy ascertainability and propose an otherwise certifiable class under Rule 23(b)(2) and (b)(3). This is because the CCPA claim does not require extensive expert analysis at the Rule 23 stage: the CCPA provides for statutory damages, *see* Cal. Civ. Code § 1798.150(a)(1)(A), and Blackbaud already has admitted that whether it implemented and maintained reasonable security procedures and practices to safeguard consumers' personal information is a class-wide issue subject to class-wide proof, Ex. B at 124:19–125:3 (agreeing that this issue is "certainly a common question"). Accordingly, this Court's ruling on Plaintiffs' renewed motion—and any Fourth Circuit order after appeal—will serve as helpful guidance for both sides as to whether ascertainability and the remaining Rule 23 requirements can be satisfied with respect to the remaining claims (including remaining bellwether claims). Armed with that guidance, the parties can continue to complete class certification briefing on the remaining bellwether claims or stipulate how to proceed with Plaintiffs' non-CCPA claims. Either way, the parties will have efficiently resolved class certification in a manner that paves the way for a straightforward and orderly resolution of Plaintiffs' claims.

By contrast, Blackbaud proposes that the parties proceed immediately to summary judgment and potentially trial on the bellwether claims alone. But because no class has been certified, 34 named plaintiffs have *over 80* independent claims, only six of which will have been litigated to a final judgment under Blackbaud's proposal. Then, as Blackbaud conceded at the September 3 status conference, there will be an appeal (including concerning the Court's order denying class certification), and the parties then may have to relitigate, and possibly retry, some or all of the bellwether claims in this Court on remand.[7] And this is all before the named plaintiffs have an

---

[7] *See* Ex. D at 14:24–15:7 ("[THE COURT:] [W]ith no class now certified, we have these bellwether claims, which are independent claims by individuals, stand-alone plaintiffs, and assume we don't get—assume you don't get summary judgment on those, we will proceed to a trial, and at

opportunity to litigate the remaining, non-bellwether claims in the first instance. Moreover, as it currently stands, the parties do not have a widespread adjudication of ascertainability that will enable them to stipulate as to how to proceed on the non-bellwether claims.

Furthermore, Blackbaud appears to assume that a single summary judgment motion and trial will resolve all 34 individual plaintiffs' bellwether claims. Without any certified class, however, it is not clear that individual plaintiffs' cases should proceed on a coordinated basis with a single, streamlined summary judgment motion (and possible trial), as opposed to 34 individual motions (and, possibly, trials). Even if Blackbaud's assumption is procedurally correct, the piecemeal litigation Blackbaud proposes does not achieve the objectives of MDL litigation and would not achieve the "speedy, quick administration of justice" that Blackbaud claimed at the September 3 conference to be of utmost concern. Ex. D at 13:16. To the contrary, Blackbaud's proposal will prolong this case, create unnecessary procedural complications, and cost the parties and this Court unnecessary time and expense.

A renewed motion for class certification as to the CCPA Subclass will streamline the Rule 23 issues for *all* of Plaintiffs' claims; reduce litigation costs and the time and effort of the parties and this Court, and progress the case in an orderly fashion toward resolution. The Court should therefore grant Plaintiffs' motion for leave to file a renewed class certification motion.

**E.      Rule 23(b)(2) does not require ascertainability.**

Finally, the Court separately should permit Plaintiffs to file a renewed motion for class certification as to the CCPA Subclass under Rule 23(b)(2). The Court's order denying class certification did so based on the Court's concerns regarding ascertainability. But the Fourth Circuit

---

the end of that trial the case could go back up on appeal and then the Fourth Circuit could review the class certification question? Is that how it would work?  MR. RAETHER: That's correct.").

recently clarified in *Kadel v. Folwell* that "[t]here is no threshold ascertainability requirement" in a Rule 23(b)(2) case that seeks only declaratory and injunctive relief. 100 F.4th 122, 161 (4th Cir. 2024) (holding that the district court "did not abuse its discretion in certifying the class" and affirming the lower court's decision). Because adjudication of whether Plaintiffs satisfy Rule 23(b)(2) requires the Court only to assess numerosity, commonality, adequacy, and typicality, and would not require an assessment of ascertainability, predominance, or superiority, Plaintiffs' renewed motion of the (b)(2) CCPA subclass is similarly an appropriate use of judicial resources.

## Conclusion

In light of the foregoing, and based on the Proposed Renewed Motion for Class Certification of the CCPA Subclass attached as Exhibit A, Plaintiffs respectfully request that the Court grant this motion for leave.

Date:  September 27, 2024

Respectfully submitted,

*/s/ Marlon E. Kimpson*
Marlon E. Kimpson (SC Bar No. 17042)
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel.: (843) 216-9000
Fax: (843) 216-9027
Email: mkimpson@motleyrice.com

Krysta Kauble Pachman
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
Email: kpachman@susmangodfrey.com

Amy E. Keller
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel: (312) 214-7900
Fax: (312) 253-1443
Email: akeller@dicellolevitt.com

Harper Segui
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLP**
825 Lowcountry Blvd., Suite 101
Mount Pleasant, SC 29464
Tel: (919) 600-5000
Fax: (919) 600-5035
Email: hsegui@milberg.com

***Plaintiffs' Co-Lead Counsel***

Gretchen Freeman Cappio
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
Email: gcappio@kellerrohrback.com

25

*Chair of Plaintiffs' Steering Committee*

Desiree Cummings
**ROBBINS GELLER RUDMAN & DOWD LLP**
420 Lexington Avenue, Suite 1832
New York, NY 10170
Tel: (212) 432-5100
Email: dcummings@rgrdlaw.com

Melissa Emert
**KANTROWITZ, GOLDHAMMER &
GRAIFMAN, PC**
747 Chestnut Ridge Road
Chestnut Ridge, NY 10977
Tel: (866) 574-4682
Fax: (845) 356-4335
Email: memert@kgglaw.com

Kelly Iverson
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
Email: kiverson@lcllp.com

Howard Longman
**LONGMAN LAW, P.C.**
354 Eisenhower Parkway, Suite 1800
Livingston, New Jersey 07039
Tel: (973) 994-2315
Fax: (973) 994-2319
Email: Hlongman@longman.law

Douglas McNamara
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue NW
East Tower, 5th Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
Email: dmcnamara@cohenmilstein.com

Melissa Weiner
**PEARSON, SIMON & WARSHAW, LLP**

800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Tel: (612) 389-0600
Fax: (612) 389-0610
Email: mweiner@pswlaw.com

***Plaintiffs' Steering Committee***

Catherine H. McElveen
**MCCULLEY MCCLUER LLC**
701 East Bay Street, Suite 411
Charleston, SC 29403
Tel: (843) 444-5404
Fax: (843) 444-5408
Email: kmcelveen@mcculleymccluer.com

***Plaintiffs' Liaison Counsel***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 27, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ Marlon E. Kimpson
Marlon E. Kimpson (SC Bar No. 17042)
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel.: (843) 216-9000
Fax: (843) 216-9027
Email: mkimpson@motleyrice.com